## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY MACHKOVSKY, | Case No. _____ |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| OBALON THERAPEUTICS, INC., ANDREW RASDAL, KIM KAMDAR, RAYMOND DITTAMORE, DOUGLAS FISHER, LES HOWE, SHARON STEVENSON, and WILLIAM PLOVANIC, | |
| Defendants. | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Gregory Machkovsky ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Obalon Therapeutics, Inc. ("Obalon" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Obalon, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger between Obalon, ReShape Lifesciences Inc. ("ReShape"), and Optimus Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Obalon ("Proposed Transaction"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2. On January 19, 2021, Obalon entered into an Agreement and Plan of Merger with

ReShape and Merger Sub ("Merger Agreement"), whereby Merger Sub will merge with and into ReShape, with ReShape becoming a wholly-owned subsidiary of Obalon.

3.      Upon consummation of the Proposed Transaction, each share of ReShape will be converted into the right to receive a currently undetermined number of Obalon shares ("Merger Consideration").  As a result, ReShape shareholders are expected to own 51% of the outstanding common stock of Obalon, while Obalon shareholders are expected to own only 49%.

4.      On April 9, 2021, in order to convince the Company's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Form S-4/A Registration Statement ("Registration Statement") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) the Obalon Adjusted ReShape Projections prepared by the Company's management; and (ii) the valuation analyses performed by the Company's financial advisor, Canaccord Genuity LLC ("Canaccord") in connection with the Proposed Transaction.

6.      The special meeting of Obalon's shareholders to vote on the Proposed Transaction is scheduled to be held on May 13, 2021 ("Shareholder Vote").  Therefore, it is imperative that the material information omitted from the Registration Statement is disclosed prior to the Shareholder Vote, so Obalon's shareholders can properly exercise their corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Obalon's shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.   Indeed, Obalon's common stock trades on the Nasdaq, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  In addition, the Company's proxy solicitor, MacKenzie Partners, Inc. is located in this District at 1407 Broadway, New York, NY 10018.

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Obalon common stock.

12.     Defendant Obalon is a public company incorporated under the laws of Delaware with

principal executive offices located at 5421 Avenida Encinas, Carlsbad, CA 92008.  The Company's common stock trades on the Nasdaq under the ticker symbol "OBLN."

13.     Defendant Andrew Rasdal is, and has been at all relevant times, a director of the Company, Chief Executive Officer, and President.

14.     Defendant Kim Kamdar, is, and has been at all relevant times, a director of the Company and Chair of the Board.

15.     Defendant Raymond Dittamore is, and has been at all relevant times, a director of the Company.

16.     Defendant Douglas Fisher is, and has been at all relevant times, a director of the Company.

17.     Defendant Les Howe is, and has been at all relevant times, a director of the Company.

18.     Defendant Sharon Stevenson, is, and has been at all relevant times, a director of the Company.

19.     Defendant William Plovanic is, and has been at all relevant times, a director of the Company.  Defendant Plovanic resigned from his position as President and Chief Executive Officer of Obalon in June of 2020.  Aside from being a director of the Company, he currently works at Canaccord as an equity research analyst.

20.     Defendants identified in paragraphs 13 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

I.      **Background of Obalon, ReShape, and the Proposed Transaction**

21.     Obalon is a vertically integrated medical device company that focuses on developing and commercializing medical devices to treat people with obesity. The Company offers the Obalon Balloon System designed to provide weight loss in patients with obesity.  Its Obalon Balloon System

4

comprises of a swallowable capsule that contains an inflatable balloon attached to a microcatheter; the Obalon Navigation System console, which is a combination of hardware and software used to track and display the location of the balloon during placement; the Obalon Touch Inflation Dispenser, which is a semi-automated, hand-held inflation device used to inflate the balloon once it is placed; and a disposable canister filled with mixture of gas.

22.    ReShape is a medical device company that provides products and services that manages and treat obesity and metabolic diseases in the United States, Australia, Europe, and internationally. Its product portfolio includes Lap-Band System, a minimally invasive long-term treatment of severe obesity and more invasive surgical stapling procedures, such as the gastric bypass or sleeve gastrectomy; and ReShape Vest system, an investigational, minimally invasive, laparoscopically implanted medical device that wraps around the stomach to enable weight loss in obese and morbidly obese patients without cutting or permanently removing portions of the stomach, or bypassing any portion of the gastrointestinal tract. ReShape also offers ReShapeCare virtual health coaching program, a virtual telehealth weight management program that supports healthy lifestyle changes for all medically managed weight-loss patients; and ReShape Diabetes Bloc-Stim Neuromodulation, a technology that is in preclinical development for the treatment of type 2 diabetes mellitus.

23.    According to the January 20, 2021, press release announcing the Proposed Transaction:

### ReShape Lifesciences Inc. to Merge With Obalon Therapeutics, Inc. to Expand Weight Loss Product Offering

SAN CLEMENTE, CA / ACCESSWIRE / January 20, 2021 / ReShape Lifesciences Inc. (OTCQB:RSLS), a global weight-loss solutions leader, announced today that it has entered into a definitive merger agreement with Obalon Therapeutics, Inc., which is listed on the NASDAQ Capital Market, a company focused on developing and commercializing novel technologies for weight loss, under which ReShape and Obalon will combine in an all-stock transaction.

Under the terms of the merger agreement that has been unanimously approved by the boards of directors of both companies, existing ReShape stockholders will have majority ownership of the combined company immediately following the closing of the merger and Obalon will be renamed ReShape Lifesciences Inc. and will trade under the NASDAQ ticker symbol "RSLS." The current directors and officers of ReShape will comprise the board of directors and executive management of the combined company.

ReShape and Obalon have delivered some of the most innovative FDA-approved weight loss solutions for the treatment of obesity. According to a recent article in the New England Journal of Medicine, the past 50 years have seen increasing attention to the issue of obesity[1], citing the World Health Organization's current data showing that global prevalence of obesity has tripled since the mid-1970s with more than 1 billion adults being overweight in addition to 650 million adults and 124 million children and adolescents being obese. This has tremendous impact on health and health related costs globally as obesity is responsible for 41% of uterine cancers; more than 10% of gallbladder, kidney, liver, and colon cancers; 40% of cases of cardiovascular disease; and most cases of type 2 diabetes.2 Further relevant in today's world, SARS-CoV-2 infection (COVID-19) is more likely to cause serious illness or death in people with obesity than in those with a healthier body-mass index.

Bart Bandy, President and Chief Executive Officer of ReShape commented, "We are excited with this opportunity to add Obalon's FDA approved Balloon System to ReShape's line of minimally invasive weight-loss solutions while also expanding our market reach. Our portfolio also includes the Lap-Band®, emerging products that support bariatric surgical procedures across the spectrum and ReShapeCare™, which is our reimbursed, telehealth-based patient support program that is available for any medically supervised weight loss program. This integration positions us to achieve our goals for growth and continued advancement towards becoming the premier weight loss company for physicians and patients."

(Emphasis in original).

## II.    The Registration Statement Omits Material Information

24.    Defendants filed a materially incomplete and misleading Registration Statement with the SEC, despite the Individual Defendants being obligated to carefully review the Registration Statement before it was filed and disseminated to the Company's shareholders, to ensure it did not contain any material misrepresentations or omissions.  Therefore, the Registration Statement should be amended prior to the Shareholder Vote, so the Company's shareholders can make an informed voting decision in connection with the Proposed Transaction.

25.    First, the Registration Statement fails to provide critical information regarding the

Obalon Adjusted ReShape Projections prepared by the Company's management. In particular, the Registration Statement fails to disclose the figures underlying the following inputs used to calculate ReShape's Unlevered Free Cash Flow for years 2021 through 2030 ("Cash Flow Projections"): (i) depreciation and amortization; (ii) stock based compensation; (iii) interest expense; (iv) change in net working capital; and (v) capital expenditures.  Without disclosure of the figures underlying these inputs, the Company's shareholders will be unable to understand how Obalon's management derived the Cash Flow Projections.

26.     Unlike poker where a player must conceal his unexposed cards, the object of a registration statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a registration statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants must disclose the figures underlying the inputs used to calculate ReShape's Cash Flow Projections.

27.     Second, the Registration Statement omits material information regarding Canaccord's financial analyses with respect to the Proposed Transaction.

28.     To start, the Registration Statement discloses that in developing its fairness opinion, Canaccord "reviewed certain projected cash and other estimates and data" of Obalon provided to them by the Company's management, yet the Registration Statement entirely omits these projections ("Omitted Projections").   Indeed, Canaccord utilized the Omitted Projections in performing the *Obalon Liquidation Analysis*. Therefore, Defendants must disclose the Omitted Projections, so the

Company's shareholders can understand the true value of Obalon and properly assess Canaccord's fairness opinion, in order to make an informed evaluation of the Proposed Transaction.

29.     Concerning the *Obalon Publicly Traded Comparable Companies Analysis*, the Registration Statement omits the individual multiples observed by Canaccord for each of the selected companies.

30.     As for the *ReShape Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying Canaccord's selection of the terminal perpetual growth rate ranging from 1.0% to 4.0%; and (ii) the components underlying the weighted average cost of capital of the publicly traded companies, used by Canaccord to derive the discount rate ranging from 18.6% to 20.6%.

31.     These key inputs are material to Obalon's shareholders, and their omission renders the summary of Canaccord's *ReShape Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….*This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).   Without the above-mentioned information, Obalon's shareholders cannot evaluate for themselves the reliability of Canaccord's *ReShape Discounted Cash Flow Analyses*, make a meaningful determination of whether the implied equity value ranges reflect the true value of ReShape or were the result of an unreasonable judgment by Canaccord, and make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction.

32.      In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.   Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

33.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.      Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."   15 U.S.C. § 78n(a)(1).

35.      Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act,

provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

36.     The omission of information from a registration statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

37.     Defendants have issued the Registration Statement with the intention of soliciting the Company's public common stockholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things: (i) the Obalon Adjusted ReShape Projections prepared by the Company's management; and (ii) the valuation analyses performed by Canaccord.

38.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

39.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Canaccord

reviewed and discussed its financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by Canaccord, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Canaccord's analyses in connection with their receipt of the fairness opinions, question Canaccord as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

40.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

41.     Obalon is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

42.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.

Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the

immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

43.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

44.     The Individual Defendants acted as controlling persons of Obalon within the meaning

of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or

directors of Obalon, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Registration

Statement filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of the Company, including the content and

dissemination of the various statements that Plaintiff contends are materially incomplete and

misleading.

45.     Each of the Individual Defendants was provided with or had unlimited access to copies

of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or

shortly after these statements were issued and had the ability to prevent the issuance of the statements

or cause the statements to be corrected.

46.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had

the power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same.  The Registration Statement contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They

were thus directly involved in preparing this document.

47.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT III**

**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

53.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public shareholders.

54.     The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

55.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 12, 2021                                    **MONTEVERDE & ASSOCIATES PC**

                                                         */s/* Juan E. Monteverde
                                                         Juan E. Monteverde (JM-8169)
                                                         The Empire State Building
                                                         350 Fifth Avenue, Suite 4405
                                                         New York, NY 10118
                                                         Tel: (212) 971-1341
                                                         Fax: (212) 202-7880
                                                         Email:
                                                         jmonteverde@monteverdelaw.com

                                                         *Attorneys for Plaintiff*